## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ROGER GERDES and TONI GERDES, | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 09-2344-DJW** |
| v. | ) | |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiffs brought this declaratory judgment and breach of contract action against Defendant American Family Mutual Insurance Company. This matter is before the Court on the parties' cross-motions for partial summary judgment on Plaintiffs' claim for declaratory judgment: Plaintiffs' Motion for Partial Summary Judgment (doc. 33) and Defendant's Motion for Partial Summary Judgment (doc. 46). The motions are fully briefed and are therefore ripe for consideration. For the reasons set forth below, Plaintiffs' Motion is denied and Defendant's Motion is granted.

## I.      STATEMENT OF UNCONTROVERTED FACTS

The following facts are uncontroverted.

1.      Plaintiffs purchased insurance policy no. 15DU-0910-01 entitled "KANSAS HOMEOWNERS POLICY – GOLD STAR SPECIAL DELUXE FORM (ED 06/94) KS" (the "Policy") from Defendant for the Plaintiffs' two-story home located at 6618 Overhill Road, Mission Hills, Kansas (the "Home").

2.      Defendant drafted the Policy.

3.      Plaintiffs paid the premium necessary to purchase the Policy.

4.      The Policy was in effect on August 27, 2008.

5.  On August 27, 2008, a fire broke out in the Home.

6.  The fire was contained in the basement, but the first and second floors suffered smoke and soot damage from the fire.

7.  Plaintiff Dr. Roger Gerdes practiced as a dentist from 1976 to 1989.

8.  After Plaintiff Dr. Gerdes sold his dental practice, he had approximately 2 tablespoons of mercury stored in the basement of the Home in a heavy duty plastic "hiker's" bottle with water over it, as he was trained in dental school.

9.  After an investigation, the American Family Investigation Report concluded that the cause of the fire was "accidental."

10. The American Family Investigation Report describes the fire damage to include smoke and soot damage.

11. The American Family Investigation Report concluded that the mercury "was in the direct fire and the mercury spread throughout the house – contaminating a large portion of the home."

12. After the fire, the Home was found to have been contaminated with mercury.

13. The Policy provides coverage for "risks of accidental direct physical loss to property described in Coverage A – Dwelling and Dwelling Extension, unless the loss is excluded in this policy."

14. The Exclusions - Section I of the Policy states, in part, as follows:

The following exclusions apply to Coverage A – Dwelling and Dwelling Extension . . . and the Supplementary Coverages – Section I. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

* * *

6. Pollution, meaning any actual, alleged or threatened discharge, dispersal, release, escape, seepage, trespass, wrongful entry or migration of pollutants from any source.

15. The Policy defines "pollutant" as follows:

Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance or any other substance listed as a hazardous substance by any governmental agency. It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. Mercury is listed as a hazardous substance by the Environmental Protection Agency.

17. The last exclusion found in Part A of the Exclusions – Section I of the Policy states, with original formatting intact:

9. Water Damage, meaning:
   a. flood, surface water, waves, tidal water or overflow of a body of water, from any cause. We do not cover spray from any of these, whether or not driven by wind;
   b. water from any source which backs up through sewers or drains, or water which enters into and overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system or other type of system designed to remove subsurface water which is drained from the foundations area; or
   c. regardless of its source, water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.
   We do cover direct loss that follows, cause by Fire or Explosion.

18. Apex Environmental Consultants, Inc. ("Apex"), hired by Defendant, summarized that its "work was initiated as a result of a recent house fire that reportedly impacted a container of stored mercury."

19. Apex also stated "that mercury contamination was being tracked through the house by first responders, adjusters, contractors, occupants, and others responding to the fire loss."

20.     Apex also confirmed that "[t]he highest levels of mercury contamination were found on those surfaces containing heavy soot."

21.     According to the Apex investigation, the "[s]amples collected from soot-affected surfaces contained more than 150 times higher mercury content than samples collected from visibly unaffected surfaces."

22.     On September 18, 2008, Defendant sent Plaintiffs a letter that stated, in part, "[w]e are advising you at this time that there is a question whether coverage under the policy mentioned above [the Policy] will apply to this loss for pollution damages."

23.     Defendant agreed to pay Plaintiffs for some of the fire damage, including payment to repair the fire, smoke and soot damages to the Home, as well as certain amounts for personal property and pollution cleanup.

24.     The amount that Defendant agreed to pay Plaintiffs did not include any amounts related to the mercury damage to the Home.

25.     Plaintiff Dr. Gerdes did not accept the payment Defendant offered, in part, because he "thought that the mercury damage would be covered under the policy because it was a direct result of the fire."

26.     The Building Inspector for Mission Hills sent Plaintiffs an April 13, 2009 letter informing them that "the City of Mission Hills hereby orders the demolition of" the Home by July 13, 2009.

27.     The April 13th letter from the Building Inspector for Mission Hills confirms that the "residual mercury in the residence creates an unsafe condition that is 'dangerous to human life or the public welfare,' as defined in Subsection 115.1 of the 2003 IBC [International Building Code]."

28.     The Home was demolished in May 2009.

29.     The Declarations page of the Policy states "Latest Building Cost Index is 184."

30.     In response to Plaintiffs' request for "the 'Building Cost Index 184' referenced in Declarations page of the Policy," Defendant responded as follows:

> American Family objects to this request as it is vague and ambiguous and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, American Family stated that "Building Cost Index 184" references the specific index in use at the time the policy declarations page was issued. The index is used to adjust the policy for annual inflation, as set forth on page 4, paragraph 8 of the policy. An independent firm, Xactware, provides and maintains the building cost indexes.

31.     The Supplementary Coverages – Section I of the Policy states, in part, as follows in Paragraph 7: "Increased Building Replacement Coverage. We will settle covered losses to the dwelling under Coverage A – Dwelling . . . at replacement cost without regard to the limit, subject to the following provisions: a. You have insured your dwelling . . . to 100% of their replacement cost as determined by our Residential Building Cost Guide."

32.     In response to Plaintiffs' request for "a copy of 'our Residential Building Cost Guide' referenced in the Supplemental Coverages – Section I section of the Policy," Defendant responded as follows:

> American Family objects to this request as it is vague and ambiguous, overly broad and burdensome, seeks confidential and proprietary information of a company not a party to this litigation and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, American Family states that the "Residential Building Cost Guide" is provided and maintained by an independent firm, Xactware.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[1]  In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.[2]  This legal standard does not change where, as here, the court is ruling on cross-motions for summary judgment, for each party still has the burden to establish the lack of a genuine issue of material fact and its entitlement to judgment as a matter of law.[3]  In ruling on the parties' motions, the court must keep in mind that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[4]  To the extent the cross-motions overlap, however, the court may address the legal arguments together.[5]  The Court notes that in this case, both Plaintiffs and Defendant seek summary judgment on Plaintiffs' declaratory judgment action. Thus, the Court will address the legal issues together.

---

[1] Fed. R. Civ. P. 56(c)(2).

[2] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hirase-Doi v. U.S. West Commc'ns, Inc.*, 61 F.3d 777, 781 (10th Cir. 1995)).

[3] *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1172 (D. Kan. 2008) (citing *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000)).

[4] *Id.* (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979)) (internal quotations omitted).

[5] *See Hjersted Family Ltd. P'ship v. Hallauer*, No. 06-2229-CM, 2009 WL 902428, at *2 (D. Kan. Mar. 31, 2009) (noting that court would address the parties' arguments together, to the extent the motions and legal arguments overlapped).

Because jurisdiction over this matter is based on diversity of citizenship between the parties, the court will apply the substantive law of the forum state.[6]  The parties agree that Kansas law governs this dispute.  Thus, in resolving the parties' cross-motions for partial summary judgment, the Court will apply Kansas law.

III.  DISCUSSION

A.  Summary of the Parties' Arguments

Plaintiffs seek declaratory judgment that: (1) the Policy is ambiguous because (i) the definition of pollutant is ambiguous, (ii) the pollution exclusion is ambiguous, and (iii) Defendant was confused as to which portion of the Policy it should rely upon to agree to pay Plaintiffs $10,000.00 for pollution cleanup; (2) all damage directly resulting from the fire, including mercury contamination, is a covered loss under the Policy; and (3) Plaintiffs are not confined by the Policy limits because the phrase "Latest Building Cost Index is 184" is ambiguous.  Plaintiffs argue they are entitled to summary judgment on their claim for declaratory judgment because the uncontroverted facts demonstrate that Plaintiffs are entitled to their requested relief.

Defendant, on the other hand, argues that the definition of pollutant and the pollution exclusion in the Policy clearly and unambiguously exclude from coverage any damages caused by the mercury contamination.  Defendant further argues that the phrase "Latest Building Cost Index is 184" is not ambiguous and, therefore, Plaintiffs are bound by the Policy limits.  Defendant contends that Plaintiffs are attempting to create ambiguity in the Policy where none exists.

---

[6] *Blackhawk-Central City Sanitation Dist. v. Am. Guarantee & Liability Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000) (citations omitted).

Defendant therefore argues that the Court should grant summary judgment in its favor and against Plaintiffs on Plaintiff's claim for declaratory judgment.

**B.    Analysis**

Before examining the Policy, the Court must review the general rules for construction of insurance policies under Kansas law.

"As a general rule, the construction and effect of a written contract of insurance is a matter of law to be determined by the court.  If the facts are admitted, . . . then it is for the court to decide whether they come within the terms of the policy."[7]  "In construing an insurance policy a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished."[8]  "The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean."[9]

An insurance policy "must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense."[10]  If, however, the terms of an insurance policy "are ambiguous or uncertain,

[7] *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 416 (Kan. 1969) (citation omitted).

[8] *American Media, Inc. v. Home Indem. Co.*, 232 Kan. 737, 739 (Kan.1983) (citations and quotations omitted).

[9] *Id.* at 740 (citations and quotations omitted)

[10] *Id.* (citations and quotations omitted).

conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail."[11]

The insurer, as the drafter of the insurance policy, has a duty to make the meaning of the terms of that policy clear.[12]  "If the insurer intends to restrict or limit coverage provided in the policy, it must use clear and unambiguous language in doing so; otherwise, the policy will be liberally construed in favor of the insured."[13] "If, however, the contract is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms."[14]

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[15] "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."[16]  The court should not strain to create an ambiguity where none exists.[17]  The facts of

---

[11] *Id.* (citations and quotations omitted).

[12] *Id.*

[13] *Goforth*, 202 Kan. at 417.

[14] *Id.* (citations omitted).

[15] *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693 (Kan. 1992).

[16] *Id.* (citations omitted).

[17] *Miner v. Farm Bureau Mut. Ins. Co.*, 17 Kan.App.2d 598, 613 (Kan. 1992) ("It was not a function of the trial court to create an ambiguity requiring an interpretation favorable to the insured when no ambiguity existed."); *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan.App.2d 791, 794 (Kan. 1991) (noting that the court should not strain to create ambiguity).

the case determine whether a provision is ambiguous.[18]

With these rules of construction in mind, the Court turns to the parties' arguments regarding construction of the Policy.

### 1. Is There Coverage Under the Policy?

Plaintiffs, as the insureds, have the burden of showing that the loss claimed is covered by the Policy.[19]  Plaintiffs point out, and it is uncontroverted, that the Policy provides coverage for "risks of accidental direct physical loss to property described in Coverage A – Dwelling and Dwelling Extension, unless the loss is excluded in this policy."  It is also uncontroverted that the Policy was in effect at the time of the fire, that the Home was damaged by the fire, and that the fire was accidental.  In addition, the Court notes that Defendant, in arguing that it is entitled to partial summary judgment, relies on an exclusionary provision in the Policy and, in doing so, essentially admits that Plaintiffs' claimed loss is covered by the Policy unless excluded by the Policy.  Indeed, Defendant explains that the Policy "is an 'all risk' policy, meaning that damages from any cause are covered unless specifically excluded by [the Policy's] terms."[20]  The Court therefore concludes that Plaintiffs have satisfied their burden of demonstrating that the claimed loss is one covered by the Policy.  The Court therefore turns to Defendant's arguments as to why Plaintiffs' claimed loss, specifically the mercury contamination, is excluded from the Policy.

---

[18] *See Atl. Ave. Assocs. v. Cent. Solutions, Inc.*, 29 Kan.App.2d 169 (Kan. App. 2001).

[19] *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 905-6 (Kan. 2004) (citations omitted).

[20] Def.'s Am. Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. & in Supp. of its Mot. for Partial Summ. J. (doc. 50) at 13.

## 2. *Does the Policy Exclude Plaintiffs' Claimed Loss?*

Defendant, as the insurer, has the burden to show that Plaintiffs' claimed loss is excluded by a specific provision of the Policy.[21] Defendant argues that, under the uncontroverted facts of this case, the Policy clearly and unambiguously excludes Plaintiffs' claimed loss for the mercury contamination. Defendant points to the pollution exclusion found in paragraph 6 of the Exclusions – Section 1, Part A, of the Policy, which provides:

> The following exclusions apply to Coverage A – Dwelling and Dwelling Extension . . . and the Supplementary Coverages – Section I. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> * * *
>
> 6.      Pollution, meaning any actual, alleged or threatened discharge, dispersal, release, escape, seepage, trespass, wrongful entry or migration of pollutants from any source.

The Policy defines "pollutant" as follows:

> Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance or any other substance listed as a hazardous substance by any governmental agency. It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Mercury is listed as a hazardous substance by the Environmental Protection Agency.

Defendant argues that the pollution exclusion in the Policy clearly excludes coverage for damages caused by any "substance listed as a hazardous substance by any governmental agency," which includes mercury, "regardless of any other cause or event contributing concurrently or in any sequence to the loss," namely, the fire. Defendant therefore argues that the Policy unambiguously

---

[21] *Exploration Place*, 277 Kan. at 906 (citations omitted).

excludes coverage for the mercury contamination and there is no need to examine the Policy further in order to create ambiguity where none exists.

Plaintiffs disagree and argue that the Policy does not exclude its claimed loss because the Policy is ambiguous. Plaintiffs contend that the Policy is ambiguous because (i) the definition of pollutant is ambiguous; (ii) the pollution exclusion is ambiguous; and (iii) Defendant was confused as to which portion of the Policy it should rely on to agree to pay Plaintiffs $10,000.00 for pollution cleanup.

The Court will examine the parties' respective arguments on each of these issues raised by Plaintiffs, keeping in mind that Defendant has the burden to demonstrate that the pollution exclusion applies.

### a. Definition of Pollutant

Plaintiffs argue that the definition of pollutant in the Policy is ambiguous because other courts have found similar definitions of pollutant to be ambiguous. Plaintiffs point the Court to the decision in *Regent Insurance Company v. Holmes*.[22] In *Regent*, Steve Holmes d/b/a Rainbow International Carpet Dyeing and Cleaning Company, the insured, visited the home of Nikki Proudfoot for the purpose of dying a carpet.[23] Holmes brought with him a bottle of 88% formic acid, which he used to determine whether Proudfoot's carpet was suitable for dyeing.[24] While Holmes and Proudfoot were in another room, Proudfoot's 3-year old daughter gained control of the bottle

---

[22] 835 F.Supp. 579 (D. Kan. 1993) (applying Kansas law).

[23] *Id.* at 580.

[24] *Id.*

and accidently poured the acid on her leg.[25]  The young girl was taken by ambulance to and received treatment at the University of Kansas Burn Treatment Unit.[26]  Proudfoot, individually and as the mother of the injured girl, brought suit against Holmes, Rainbow, and the supplier of the plastic bottle for damages arising from her daughter's injuries.[27]  Holmes sought defense and indemnification from his insurance company, Regent.[28]  Regent then brought a separate action seeking a declaration that it had no obligations under the insurance policy.[29]

The insurance policy in *Regent* provided coverage for liability arising from bodily injury.[30] However, Regent argued that the claimed loss was excluded from the policy by the pollution exclusion, which excluded from coverage any bodily injury arising out of the actual release of pollutants.[31]  The policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[32]  Regent therefore argued that the policy excluded coverage for the young girl's "injuries because they arose

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Regent*, 835 F.Supp. at 580.

[29] *Id.*

[30] *Id.* at 581.

[31] *Id.*

[32] *Id.*

from the actual release of an acid – a 'liquid irritant' specifically identified as a pollutant in the policy."[33]

The *Regent* court concluded that the policy was ambiguous because its definition of pollutant used the terms "irritant" and "contaminant" without defining them.[34] The *Regent* court noted the *Westchester Fire Ins. Co. v. City of Pittsburg*[35] decision, where Judge O'Connor dealt with a similar definition of pollutant and stated, "[a]ny substance could conceivably be an 'irritant or contaminant' under the right circumstances."[36] Having found the term pollutant ambiguous, the *Regent* court construed the term in the light most favorable to the insured, and concluded that the term pollutant "connotes a substance that is harmful or toxic to persons or the environment generally."[37] The *Regent* court further concluded that although a bottle of acid may be harmful to a specific individual, as was the case here, it was not harmful to persons or the environment generally.[38] The *Regent* court therefore held that the bottle of "formic acid was not a pollutant for which the policy exclude[d] liability."[39]

---

[33] *Id.*

[34] *Regent*, 835 F.Supp. at 581.

[35] 794 F.Supp. 353 (D. Kan. 1992), *denying reconsideration of Westchester Fire Ins. Co. v. City of Pittsburg*, 768 F.Supp. 1463, 1470 (D. Kan. 1991) (listing hypothetical "irritants"), *aff'd on other grounds*, *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg*, 987 F.2d 1516 (10th Cir. 1993).

[36] *Id.* at 355.

[37] *Regent*, 835 F.Supp. at 582.

[38] *Id.*

[39] *Id.*

Defendant argues that Plaintiffs' reliance on *Regent* is misplaced because the *Regent* case is distinguishable from this action. The Court agrees. As Plaintiffs point out, the facts of the case determine whether a provision is ambiguous.[40] Unlike the insurance policy in *Regent*, the Policy in this case contains a longer, more specific definition of the term pollutant:

> Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, in any form, including, but not limited to lead, asbestos, formaldehyde, radon, any controlled chemical substance *or any other substance listed as a hazardous substance by any governmental agency*. It also includes smoke, vapor, soot, fumes, alkalis, chemicals, garbage, refuse and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[41]

Under the facts of this case, it is clear that the term pollutant includes any "substance listed as a hazardous substance by any governmental agency." It is also clear that mercury is listed as a hazardous substance by the Environmental Protection Agency. The Court therefore concludes that it need not search for a definition of pollutant because the Policy makes it clear that mercury is considered a pollutant. The Court will not strain to create an ambiguity where none exists.

In so concluding, the Court relies on two cases identified by Defendant where the Kansas Court Appeals found a similar definition of pollutant unambiguous as applied to the specific facts of the case. In *Atlantic Avenue Associates v. Central Solutions, Inc.*,[42] the Kansas Court of Appeals reversed the trial court's judgment because the pollution exclusion at issue was unambiguous and precluded coverage under the uncontroverted facts of the case.[43] In *Atlantic Avenue*, the insured leased a property wherein it manufactured a variety of topical and hard surface cleaners, including

---

[40] *Atl. Ave. Assocs.*, 29 Kan.App.2d at 171.

[41] Emphasis added by the Court.

[42] 29 Kan.App.2d 169 (Kan. App. 2001).

[43] *Id.* at 169.

body lotions, shampoos, and other cleaning products that it sold to end users.[44]  A 55-gallon drum containing liquid cement cleaner developed a leak while it was being stored on the premises.[45]  The insured's facilities manager discovered the leak and took care of it, but not before the leased premises were damaged.[46]  The landlord brought an action against the insured for damages, and the insured filed a third-party action against the insurer, Great Northern, claiming breach of the insurance policy.[47]

The insurance policy in *Atlantic Avenue* contained a pollution exclusion, which excluded from coverage property damage arising out of the actual release or seepage of pollutants.[48]  The insurance policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[49]  The trial court concluded that the definition of pollutants was ambiguous because it was "so broad that, if applied to materials stored in the warehouse of the insured, there is no substance not covered by the exclusion."[50]

The Kansas Court of Appeals found that the trial court erred in concluding that the pollution exclusion was ambiguous.  The court explained that "[w]here the language of a contract is clear, the

---

[44] *Id.* at 169-170.

[45] *Id.* at 170.

[46] *Id.*

[47] *Id.*

[48] *Atl. Ave. Assocs.*, 29 Kan.App.2d at 170.

[49] *Id.* at 171.

[50] *Id.*

court must enforce the terms as written and not look for meanings that do not appear on the instrument's face."[51] The court found unpersuasive the insured's argument that the provision was so broad as to render it ambiguous.[52] Rather, the court concluded that under the uncontroverted facts of the case, policy's definition of pollutant clearly included the liquid cement cleaner which leaked and caused damage to the landlord's property.[53]

The Kansas Court of Appeals also dealt with a pollution exclusion in *Crescent Oil Company v. Federated Mutual Insurance Company*.[54] In *Crescent Oil*, gasoline from underground storage tanks located at the gas station owned by Crescent, the insured, leaked into the basement of a building on the adjoining property.[55] A suit was brought against Crescent seeking damages and Federated, the insurer, refused to defend Crescent on the damage claim based on the pollution exclusion in the insurance policy.[56] Crescent thus brought a declaratory judgment action to determine Federated's duties with respect to the claimed damages for the gasoline leak.[57] The trial court granted summary judgment in favor of Federated and Crescent appealed.[58]

---

[51] *Id.* at 172 (citations omitted).

[52] *Id.* at 173-74.

[53] *Id.* at 175.

[54] 20 Kan.App.2d 428 (Kan. App. 1995).

[55] *Id.* at 429.

[56] *Id.* at 429-30.

[57] *Id.* at 430.

[58] *Id.*

The insurance policy at issue in *Crescent* contained a pollution exclusion, which excluded coverage for property damage caused by the release or escape of pollutants.[59]  The policy defined pollutants as "one or more solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed."[60]  Crescent argued that gasoline was not a "contaminant" and its leaking was not a pollutant.[61]  Crescent claimed that the word contaminant "is not to be interpreted quite so literally."[62] In support of this argument, Crescent relied on "cases supporting the broad principle that pollution clauses are intended to exclude liability for environmental damage, *Westchester Fire Ins. Co. v. City of Pittsburg*, Kan., 768 F.Supp. 1463, 1468-69 (D. Kan.1991), or only exclude knowing emissions of pollutants over an extended period of time[]."[63]

The Kansas Court of Appeals dismissed Crescent's arguments, concluding, "Cases in some jurisdictions may have limited the scope of the definition of pollutant under the exclusion in a number of ways, but we are not constrained to do so."[64]  The court thus examined the definition of pollutant under the facts in the *Crescent* case and concluded that "[g]asoline escaping from its place

---

[59] *Id.*

[60] *Crescent Oil*, 20 Kan.App.2d at 431.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 431-32 (some citations omitted).

[64] *Id.* at 432.

of confinement is clearly a pollutant."[65]  The court found that the definition of pollutant did not permit multiple conflicting interpretations and refused to create an ambiguity where none existed.[66]

The Court finds that the reasoning applied by the Kansas Court of Appeals in *Atlantic Avenue* and *Crescent Oil* is equally applicable in this case.  The Court need not search for a definition of pollutant or find ambiguity where none exists.  The Court holds that the definition of pollutant in the Policy, as applied to the facts of this case,  is not ambiguous.  The term pollutant clearly includes mercury, which is listed as a hazardous substance by the Environmental Protection Agency.  Finding no ambiguity, the Court will give the definition of pollutant its plain and ordinary meaning and there is no need for judicial interpretation.   Rather, the Court must enforce the definition of pollutant according to its terms, which demonstrate that mercury is a pollutant under the Policy.

### b.    *Pollution Exclusion*

Plaintiffs argue that the pollution exclusion in the Policy is ambiguous because (i) Defendant has inconsistently applied the exclusion and (ii) the last sentence in the Exclusions – Section I, Part A of the Policy makes the pollution exclusion ambiguous.  The Court will address each of these arguments in turn.

---

[65] *Id.*

[66] *Crescent Oil*, 20 Kan.App.2d at 433.

### i.       *Application of the Pollution Exclusion*

According to Plaintiffs, Defendant has not consistently applied the pollution exclusion, thereby creating an ambiguity in the Policy.  It is uncontroverted that Defendant agreed to pay Plaintiffs for fire, smoke and soot damages to the Home.  Plaintiffs argue that Defendant's agreement to pay for damages caused by smoke and soot is inconsistent with Defendant's refusal to pay for the mercury contamination   In support of this argument, Plaintiffs point out that the pollution exclusion in the Policy excludes from coverage loss caused directly or indirectly from the actual discharge, dispersal and release "of pollutants from any source."  The definition of pollutants includes smoke and soot.  Thus, Plaintiffs argue that when the definition of pollutant is read together with the pollution exclusion, the Policy excludes coverage for smoke or soot "from any source," including the fire.  Plaintiffs conclude that Defendant has inconsistently applied the pollution exclusion because the exclusion supports a refusal to pay for damages from smoke and soot caused by the fire, but Defendant has agreed to pay for those damages, and yet Defendant uses the same pollution exclusion to support its denial of coverage for the mercury contamination.  Plaintiffs claim that this inconsistency makes the  pollution exclusion ambiguous.

Defendant argues that the pollution exclusion is unambiguous on its face and that its actions are entirely consistent with the Policy.  Defendant points to the definition of pollutant and argues that when read as a whole the term pollutant includes "smoke" and "soot" resulting from a substance listed as a pollutant.  Defendant also argues that the Policy is an "all risk" policy, meaning that damages from any cause are covered unless specifically excluded by the policy's terms.  Defendant therefore reasons that because the Policy does not exclude smoke and soot damage caused by a fire, those damages are covered by the Policy.

The Court has looked at the pollution exclusion and the definition of pollutant and finds that given its natural and reasonable meaning, the Policy is unambiguous - it does not exclude damages from smoke and soot caused by the fire. The Court need not strain to create an ambiguity. In reading the Policy as a whole, it appears that the parties never intended to exclude smoke and soot damages caused by a fire. Indeed, it is hard to find that an insured would be willing to pay for a policy that covered damages caused by a fire, but not the damages caused by the smoke and soot from the fire.[67] The Court imagines that if Defendant had attempted to interpret the pollution exclusion to deny coverage for the smoke and soot damage caused by the fire, Plaintiffs would be arguing that the plain language of the Policy requires Defendant to pay for such damages. The Court finds nothing inconsistent about Defendant's interpretation and application of the pollution exclusion and therefore declines to find any ambiguity in the pollution exclusion due to Defendant's actions.

Even if the Court were to be persuaded by Plaintiffs' argument and conclude that the pollution exclusion is ambiguous because of Defendant's application of the exclusion, it would only be with respect to whether the Policy excludes from coverage those damages caused by smoke and soot from a fire. In finding such an ambiguity, the Court would construe the Policy in the light most favorable to the Plaintiffs and would conclude that damages caused by smoke and soot from the fire are covered by the Policy. Since Defendant has already agreed to pay for damages caused by the smoke and soot from the fire, such a conclusion would be unnecessary. However, any ambiguity as to whether the pollution exclusion excludes from coverage the smoke and soot damage caused

---

[67] *See Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 823 (Kan. 1997) (asking why anyone seeking insurance for property would knowingly purchase a policy that covered liability for hostile fire damage, but excluded smoke damages from the fire).

by the fire does not create a question of whether the pollution exclusion excludes from coverage those damages caused by the pollutant mercury. The Court has already concluded that the term pollutant unambiguous includes mercury.

### ii. *Last Sentence in the Exclusions Section*

Plaintiffs argue that the last sentence in the Exclusions – Section I, Part A of the Policy, which contains the pollution exclusion, creates an ambiguity in the pollution exclusion. The last sentence in the Exclusions – Section I, Part A is: "We do cover direct loss that follows, caused by Fire or Explosion." Plaintiffs claim that this sentence applies to each of the exclusions contained within the Exclusions – Section I, Part A, including the pollution exclusion. Plaintiffs therefore argue that the pollution exclusion does not exclude direct loss following a fire, including the mercury contamination.

Defendant argues that Plaintiffs' interpretation of the exclusions section distorts the Policy to create an ambiguity where none exists. Defendant points out that the sentence relied upon by Plaintiffs appears after the last paragraph in the Exclusions – Section I, Part A of the Policy, which reads as follows with the formatting intact:

> 9. Water Damage, meaning:
>    a. flood, surface water, waves, tidal water or overflow of a body of water, from any cause. We do not cover spray from any of these, whether or not driven by wind;
>    b. water from any source which backs up through sewers or drains, or water which enters into and overflows or accidentally discharges from within a sump pump, sump pump well, sump pump well discharge system or other type of system designed to remove subsurface water which is drained from the foundations area; or
>    c. regardless of its source, water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway or swimming pool.
>
> We do cover direct loss that follows, caused by Fire or Explosion.

Defendant argues that the sentence relied upon by Plaintiffs is the last sentence in paragraph 9 and that the sentence only applies to paragraph 9, the water damage exclusion, and does not apply to every exclusion identified in the Exclusions – Section I, Part A. In support of this argument, Defendant points out that the sentence is indented so as to fall under the numbering for paragraph 9 and that the sentence is attached to paragraph 9. Defendant argues that it is clear that the sentence only applies to paragraph 9.

The Court has reviewed the Policy as a whole, including the Exclusions – Section I, Part A. The Court notes that the sentence relied upon by Plaintiffs is indented so as to fall under the numbering for paragraph 9 and the sentence is attached to paragraph 9 (there is no space between paragraph 9 and the sentence). In addition, several of the other exclusion paragraphs found in the Exclusions – Section I, Part A are similarly structured and formatted. For example, paragraph 1 excludes loss caused by earth movement and lists those causes specifically excluded. The paragraph ends with the following sentence, which is indented so as to fall under the numbering for paragraph 1 and is attached to the paragraph: "We do cover only direct resulting loss when caused by: a. fire; b. explosion other than the explosion of a volcano; or c. if an insured period, breakage of glass or safety glazing material which is part of a building." In addition, Paragraph 5 in the exclusions section also ends with a sentence which is indented to fall under the numbering for paragraph 5 and is attached to the paragraph, which states: "We do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by an insured peril." The pollution exclusion found in paragraph 6 is not followed by a similar sentence.

The Court concludes that a plain, natural, and reasonable interpretation of the Policy demonstrates that the sentence relied upon by Plaintiffs applies only to paragraph 9, the water

damage exclusion. The formatting of paragraph 9 and the structure of the Exclusions – Section I, Part A as a whole support this interpretation. If the Court were to adopt Plaintiffs' interpretation and apply the sentence at the end of paragraph 9 to each of the paragraphs in the Exclusions – Section I, Part A, then paragraphs 1 and 5 would contain a seemingly repetitive, unnecessary sentence explaining that coverage is provided for direct loss caused by a fire. The Court further concludes that the pollution exclusion is not made ambiguous by last sentence in paragraph 9 in the Exclusions – Section I, Part A of the Policy.

### c. *Defendant's Alleged Confusion Regarding the Pollution Cleanup Provision*

Plaintiffs argue that the Policy is ambiguous because Defendant was confused as to which portion of the Policy it should rely upon to agree to pay Plaintiffs $10,000.00 for pollution cleanup. Plaintiffs argue that during Plaintiff Dr. Roger Gerdes' November 2009 deposition and in Defendant's original response to Plaintiffs' motion for summary judgment, Defendant relied upon the pollution endorsement to the Policy as its basis for agreeing to pay Plaintiffs $10,000.00 for pollution cleanup. Plaintiffs point out that after the testimony of one of Defendant's representatives on January 20, 2010 that the endorsement was not relevant, Defendant amended its summary judgment response to remove all references to the endorsement and to insert references to a different provision in the Policy - paragraph 13 in the Supplementary Coverages – Section I. Plaintiffs argue that Defendant's confusion over which section of the Policy it should rely upon to agree to pay Plaintiffs for pollution cleanup demonstrates that the Policy is ambiguous.

The Court is not at all persuaded that the pollution exclusion relied upon by Defendant to deny coverage for the mercury contamination is somehow rendered ambiguous by Defendant's counsel's mistake as to which portion of the Policy was being relied upon to provide coverage for

pollution cleanup. Defendant argues that statements of counsel are not evidence and any drafting error in the pleadings on the part of Defendant's counsel cannot be used to support a claim that the Policy is ambiguous. The Court agrees.

Furthermore, even if Defendant's change in reliance from the pollution endorsement to paragraph 13 in the Supplementary Coverages – Section I of the Policy creates an ambiguity, the Court is not persuaded that the pollution exclusion is thus rendered ambiguous. To be clear, the pollution cleanup provision is not the same as the pollution exclusion. Defendant does not rely on the pollution cleanup provision to deny coverage for the mercury contamination, but rather relies on this provision to agree to pay Plaintiffs' $10,000.00 for pollution cleanup. Defendant relies on the pollution exclusion to deny coverage for the mercury contamination. Thus, any ambiguity in the Policy as to which provision should be relied on to pay for pollution cleanup does not thereby create an ambiguity in the pollution exclusion. The Court will not create ambiguity in the pollution exclusion where none exists.

Having considered the parties' arguments concerning the Policy's coverage and exclusions, the Court holds that Defendant has satisfied its burden of demonstrating that the Policy excludes coverage for the mercury contamination.

### 3. Are Plaintiffs' Confined to the Policy Limits?

Finally, Plaintiffs argue that they should not be held to the Policy's limits because the phrase "Latest Building Cost Index is 184," which appears on the Declarations page of the Policy, is ambiguous. The Court concludes, however, that it need not address this last argument because the Court has already concluded that the Policy is not ambiguous and that damages for the mercury

contamination are clearly excluded from coverage. Any issues with respect to exceeding the Policy limits are therefore moot.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion is denied and Defendant's Motion is granted. The Court hereby enters summary judgment in favor of Defendant and against Plaintiffs on Plaintiffs' declaratory judgment action. The Court holds that the Policy clearly and unambiguously excludes damages for the mercury contamination from coverage.

**IT IS THEREFORE ORDERED** that  Plaintiffs' Motion for Partial Summary Judgment (doc. 33) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment (doc. 46) is granted.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 20th day of May 2010.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge

cc:      All counsel and *pro se* parties